1
2
3
4
5
6
7
8                           IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD LOPEZ,

11                 Petitioner,                No. CIV S-03-1027 DFL EFB P

12        vs.

13   GAIL LEWIS, Warden,

14                 Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Respondent filed an answer on October 15, 2006, and

18   petitioner filed a traverse on November 11, 2003.

19        Petitioner challenges his 2001 conviction on three counts of robbery and three counts of

20   assault with a deadly weapon, *see* Cal. Penal Code §§ 211, 245(a)(1)), and the enhanced

21   sentence of eighty-nine years to life in prison imposed thereon.[1]  Petitioner claims that he is

22   entitled to relief upon the grounds that (1) on two occasions the trial court erroneously prevented

23   him from discharging his retained counsel, (2) counsel rendered ineffective assistance in failing

24
        [1] Enhancements were based on personal use of a deadly or dangerous weapon, namely, a
25   knife (Cal. Penal Code §12022 (b)(1)); petitioner's record of two prior serious felony convictions
     (Cal. Penal Code §§667(b)-(i), 1170.12); and other enhancements pursuant to Cal. Penal Code
26   §§ 667(a)(1) and 667.5(b).

                                              1

to move to suppress evidence obtained pursuant to a warrantless search and in failing to raise

critical issues, (3) an in-court identification should have been inadmissible because it was based

on an in-field show-up at which petitioner did not have counsel present, (4) the court refused

petitioner's request for an overnight continuance for the purpose of securing a necessary witness,

(5) petitioner was not allowed to have a jury determination of his two prior strikes, and (6) the

trial court misinstructed the jury and committed numerous other errors.

FACTS[2]

> The evidence adduced at trial showed that [petitioner] (acting alone or with others) stole items from a J.C. Penney store on August 18 and October 26, 1998, and from a Kmart store on December 3, 1998.  In two of the three incidents, either [petitioner] or his associate was stopped by loss prevention agents immediately outside the store.  Each time, [petitioner] brandished a knife and slashed at the agents with it.

*People v. Lopez*, slip op. at 2.

ANALYSIS

I.    Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in

state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable  determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established

United States Supreme Court precedents if it applies a rule that contradicts the governing law set

forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable

---

[2]   The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in *People v. Lopez*, No.C037719 (May 20, 2002), a copy of which is attached as Exhibit D to Respondent's Answer, filed October 15, 2003.  A copy of the opinion may also be viewed at 2002 WL 1019018.

from a decision of the Supreme Court and nevertheless arrives at a different result.  *Early v. Packer*, 537 U.S. 3, 7 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")  The court looks to the last reasoned state court decision as the basis for the state court judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

II.    Procedural Bar

Petitioner raises eight claims in this petition, the first of which is the only one addressed with a reasoned decision in the state courts.  The exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims sought to be presented in a habeas corpus proceedings.  *See Rose v. Lundy*, 455 U.S. 509 (1982);  *Carothers v. Rhay*, 594 F.2d 225 (9th Cir. 1979); 28 U.S.C. § 2254(b).  "A petitioner may satisfy the exhaustion requirement in two ways:  (1) by providing the highest state court with an opportunity to rule on the merits of the claim . . .; or (2) by showing that at the time the petitioner filed the habeas petition in federal court no state remedies are still available to the petitioner and the petitioner had not deliberately by-passed the state remedies."  *Batchelor v. Cupp* , 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted).  The exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts the initial opportunity to correct alleged constitutional deprivations.  *See Picard v. Connor*, 404 U.S. 270, 275 (1971).

Although the exhaustion doctrine requires only the presentation of each federal claim to the highest state court, the claims must be presented in a posture that is acceptable under state procedural rules. *Sweet v. Cupp*, 640 F.2d 233 (9th Cir. 1981). Thus, an appeal or petition for post-conviction relief that is denied by the state courts on procedural grounds, where other state remedies are still available, does not exhaust the petitioner's state remedies. *Pitchess v. Davis*, 421 U.S. 482, 488 (1975); *Sweet*, 640 F.2d at 237-38.

In the instant case, the Sacramento County Superior Court summarily denied petitioner's first application for writ of habeas corpus on April 3, 2002, citing *In re Swain*, 34 Cal.2d 300 (1949). Exhibit J. The *Swain* citation indicates that petitioner did not "allege with particularity the facts upon which he would have a final judgment overturned." *Id.* at 304. Because citation to *Swain* as the basis for denying a state habeas petition generally indicates that the petitioner has not alleged with particularity sufficient facts in support of his petition, and is without prejudice to the filing of a subsequent petition meeting the pleading requirements, federal courts have found that such denials do not establish the exhaustion of available state remedies. *Id. See also Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986) (citing *McQuown v. McCartney,* 795 F.2d 807 (9th Cir. 1986)).

There is an exception to this rule where the federal court finds that the facts have been pled before the highest state court with as much particularity as is practicable. *See Villalobos*, 799 F.2d at 1320. After review of the petition presented to the California Supreme Court by petitioner, this court finds that petitioner therein pled the facts supporting all of his claims with as much particularity as is practicable. Therefore, the exception applies in the instant case and petitioner's claims will be considered.

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief rests on a state law ground that is independent of federal law and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Harris v. Reed*, 489 U.S. 255, 260-62 (1989). Generally, the only state law

4

grounds meeting these requirements are state procedural rules.  If there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate:  (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice.  *Harris*, 489 U.S. at 262 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

The Ninth Circuit has explained the independent and adequate state ground requirement:

> A procedural default is not "independent" if, for example, the state procedural bar depends upon an antecedent determination of federal law.  Similarly, the procedural default is not "adequate" if the state courts themselves bypass the petitioner's default and consider his claims on the merits, if the procedural rule appears to be discretionary, or, ordinarily, if the state fails to assert an interest in compliance with its procedural rules in the petitioner's federal habeas proceedings.

*Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992) (citations omitted); *see also Park v. California*, 164 F.3d 1226 (9th Cir. 1999).

Petitioner's second writ of habeas corpus was denied by the Sacramento Superior Court on March 18, 2003, on the grounds set forth in *In re Waltreus*, 62 Cal.2d 218 (1965).  Exhibit T.  *In re Waltreus* holds that a petitioner may not use habeas corpus "as a second appeal."  *Waltreus*, 62 Cal. 2d at 225.  In *In re Dixon*, 41 Cal.2d 756 (1953), the California Supreme Court held that "habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction."  *Dixon*, 41 Cal. 2d at 759.  *In re Miller*, 17 Cal.2d 734, 735 (1941), permits a petitioner to explain a change from the prior circumstances warranting reconsideration.  This court must examine whether the state courts were regularly and consistently applying these procedural default rules "at the time the claim should have been raised." *Calderon v. United States District Court*, 103 F.3d 72, 75 (9th Cir.1996).

The procedural bar relied on by respondents was not "firmly established" during the time petitioner was pursuing his appeal in state court.  Accordingly, the claims presented by petitioner

in his second state habeas petition are not procedurally defaulted. *Fields v. Calderon*, 125 F.3d 757 (9th Cir. 1997).[3]  The court will therefore turn to the merits of petitioner's claims as presented in his second state petition.

III.   Petitioner's Claims

A.   Denial of Petitioner's Motion to Discharge His Retained Counsel.

Petitioner's first claim is that the trial court violated his Sixth Amendment right to the effective assistance of counsel and his Fourteenth Amendment right to due process by denying his motions to discharge his retained counsel.

The appellate court determined:

The trial court, in its discretion, may deny the right [to discharge retained counsel ](1) if discharging counsel would result in significant prejudice to the defendant; or (2) if it is not timely, i.e., if it will disrupt the orderly processes of justice under the circumstances of the particular case.  Since [petitioner]'s right to discharge retained counsel is not absolute, [petitioner] was required to seek and obtain the permission of the court to either substitute another attorney or represent himself.  He did not seek such permission with sufficient specificity ... to preserve the issue for appeal.[4]  Trial courts are not required to read the minds of criminal defendants.

*People v. Lopez*, slip op. at 6 (citations omitted).

////

_____

[3]  Moreover, for purposes of procedural default analysis, a discretionary state rule cannot bar federal habeas corpus review.  *See Siripongs v. Calderon*, 35 F.3d 1308 (9th Cir. 1994).  The rule of *Dixon* is, by its terms, discretionary.  It admits of the possibility of "special circumstances constituting an excuse" for failure to raise a claim by way of direct appeal; when such circumstances are found, the California Supreme Court may entertain the claim.  *See Karis v. Vasquez*, 828 F. Supp. 1449, 1462-63 (1993).  Similarly, *Miller* permits the merits of the petition to be considered where there has been a change from prior circumstances.  For these reasons, the California Supreme Court's citation to *Dixon* and *Miller* will not operate as a procedural bar in this case.

[4]  The California Court of Appeal cited *People v. Marshall*, 15 Cal.4th 1, 20-21, 24-25, 27 (1997) (to invoke the right to self-representation, defendant must make an unequivocal assertion of that right); *People v. Windham*, 19 Cal.3d 121, 127-128 (1977)(same); *People v. Caird*, 63 Cal.App.4th 578, 583 (1988)(same); *People v. Lucky*, 45 Cal.3d 259, 281 and fn. 8 (1988) (defendant represented by appointed counsel is not required to make a proper and formal legal motion, but must make "at least some clear indication . . . that he wants a substitute attorney," failing that, the court has no duty to hold a *Marsden* hearing); and *Davis v. United States*, 512 U.S. 452, 459 (1994) (invoking the *Miranda* right to counsel requires more than an ambiguous or equivocal assertion thereof).

In reviewing the state court's rejection of petitioner's Sixth Amendment claim, this court's inquiry is not whether the state trial court abused its discretion in denying the motions to discharge retained counsel. *Schell v. Witek,* 218 F.3d 1017, 1024-25 (9th Cir. 2000) (*en banc*) (overruling earlier circuit precedent that habeas court's inquiry was whether the state court's denial of motion to substitute counsel was an abuse of discretion). Rather, the "ultimate constitutional question" on federal habeas review is whether the state trial court's denial of the motions "actually violated" petitioner's constitutional rights in that the conflict between petitioner and his attorney had become "so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id.* at 1026.

This court may also consider the impact that last-minute motions seeking to discharge counsel have on the orderly process of justice. *See Morris v. Slappy,* 461 U.S. 1, 11-12, 14-15 (1983) (noting that broad discretion must be granted trial courts on matters of continuances, including where invocation of Sixth Amendment right to counsel may disrupt trial proceedings).

Petitioner specifically claims the trial court erred by refusing to allow him to discharge his counsel on two occasions: (1) on March 2, 2000, the second day of trial, where the court, assuming counsel was appointed rather than retained, erroneously conducted a hearing pursuant to *People v. Marsden*, 2 Cal.3d 118 (1970)[5] and, after hearing petitioner's reasons for seeking to discharge his counsel, stated that none of the reasons cited by petitioner "would cause the Court to relieve counsel and appoint somebody else," and (2) on March 6, 2000, the third day of trial, after the court was informed that counsel was retained and again conducted a hearing in which petitioner raised the same issues and the court again denied his motion, stating also that the motion was untimely and the court would proceed with trial.

---

[5] *People v. Marsden* applies when a criminal defendant seeks to substitute court-appointed counsel. Under *Marsden*, a defendant who is dissatisfied with court-appointed counsel must be permitted to state his or her reasons why the attorney should be replaced. *See Marsden*, 2 Cal.3d at 123-24.

1.    <u>March 2, 2000, Ruling</u>

The California Court of Appeal considered and rejected petitioner's claim that the trial court erred in denying petitioner's first motion to discharge his counsel.  As the record reveals, the court was not aware that counsel had been retained rather than appointed, until after the conclusion of the hearing when counsel informed the court of that fact.  The State Appellate Court reasoned:

> [Petitioner]'s contention that the court denied him his right to discharge his retained counsel on March 2 is fundamentally undermined by his failure to apprise the court of a desire to do so.
>
> In the present case [petitioner] and [counsel] apparently believed that [counsel] could only be discharged for cause.  Accordingly, each mistakenly requested that the court hear [petitioner]'s *Marsden* motion.  Unaware of [counsel]'s status as retained counsel, the court addressed the *Marsden* motion, conducted a *Marsden* hearing, and made a *Marsden* ruling.  [Petitioner] got exactly what he requested.

*People v. Lopez*, slip op at 5-6.

The record shows that petitioner made his motion because he was unhappy with counsel's decision not to oppose an *in limine* motion, upon which the court would have ruled unfavorably, among similar concerns.   "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers.  *Wheat v. United States,* 486 U.S. 153, 159 (1988) (citation omitted).  Put simply, the Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel.  *Slappy,* 461 U.S. at 14.

The court properly concluded that neither petitioner nor counsel demonstrated a breakdown in the attorney-client relationship implicating petitioner's Sixth Amendment right to effective assistance of counsel.  Furthermore, petitioner has not established on this record that there was "a total lack of communication" that  "prevented an adequate defense" as required to establish abuse of discretion.  *Compare United States v. Walker*, 915 F.2d 480, 483-84 (9th

8

1    Cir.1990) (evidence showed defendant refused to speak with counsel concerning case

2    preparation resulting in inadequate defense).  To the contrary, the record reflects that petitioner

3    and counsel conferred and communicated before, throughout, and following petitioner's motions

4    to substitute counsel.  The bases of petitioner's motions were disagreements as to matters of trial

5    strategy.   Before that day, counsel and petitioner had worked together for nine months without

6    major interpersonal difficulty or apparent disagreement over matters of substance or counsel's

7    performance.  Under these circumstances, the court could reasonably find that this disagreement

8    as to how counsel would proceed with issues at trial did not necessarily represent a total

9    breakdown in the attorney-client relationship or otherwise jeopardize petitioner's right to

10   effective assistance.

11        The appellate court found:

12        [T]he court reasonably inferred that the [petitioner] was merely trying to delay the trial.
          That finding is supported by the record, to wit, the disagreement with [counsel] was
13        'minor' in the court's view; [petitioner] had previously replaced his assistant public
          defender — by his own admission, a Three Strikes law specialist — because [petitioner]
14        felt she was too "negative" about his case; [petitioner] sought to rely on false rumors that
          [counsel] was an alcoholic; [petitioner] tried to disqualify [the judge]; the case had
15        already languished for some time; and [counsel] had demonstrated to the court's
          satisfaction that he was 'perfectly competent' and ready to try the case.

16

17   *People v. Lopez*, slip op. at 14.

18        At both hearings, the trial court allowed petitioner the opportunity to fully explain on the

19   record his problems with his trial counsel.  The record shows that the court focused on, fully

20   explored, and appeared to resolve the conflicts expressed by petitioner.  Petitioner's difference of

21   opinion as to trial strategy does not evidence that counsel was incompetent.  Rather, it evidences

22   only petitioner's desire to direct his own trial in contradiction with the judgment of counsel.

23   Accordingly, the trial court did not commit error in denying petitioner's motion to discharge his

24   counsel.

25        Petitioner is not entitled to federal habeas relief on this claim.  The California Court of

26   Appeal's rejection of the claim was not contrary to, nor involved an unreasonable application of,

9

controlling federal law, nor was based on an unreasonable determination of the facts.  *See* 28

U.S.C. § 2254(d); *cf. Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970) (sufficient evidence

of irreconcilable conflict found where defendant was forced to trial with assistance of lawyer

with whom he was dissatisfied, would not cooperate, and would not, in any manner whatsoever,

communicate).

　　　2.　　　March 6, 2000, Ruling

　　　The California Court of Appeal properly concluded that petitioner's motion to dismiss

counsel on the eve of trial was untimely, and that neither petitioner nor counsel demonstrated an

actual conflict of interest.  The appellate court concluded that:

> [T]he trial court made it clear to [petitioner] that he could substitute retained
> counsel of his choice if he had another attorney ready to proceed that day.  By
> then the court knew [counsel] was retained.  When [petitioner] expressed a desire
> to discharge [counsel], the court told [petitioner]: "as retained counsel, if you've
> hired some other counsel that you're ready to bring in here to represent you on the
> matter, you're perfectly free to do that."
>
> [Petitioner], however, did not yet have another attorney ready to step in and
> proceed.  Rather, he wanted a three-week delay so he could search for a new
> attorney willing to represent him.  The court denied the request.  It was only after
> the court expressed its unwillingness to grant the continuance that [petitioner]
> then made a belated request to represent himself.  The court denied that request
> too and in so doing appeared well aware that had he allowed [petitioner] to
> represent himself the court would have then been compelled to continue the trial
> to give [petitioner] time to prepare.

*People v. Lopez*, slip op. at 12-13.

　　　The Ninth Circuit Court of Appeal has previously held that a motion to substitute counsel

six days before trial was untimely. *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991).

The court observed in *Garcia* that this court has "consistently held that a district court has broad

discretion to deny a motion for substitution made on the eve of trial if the substitution would

require a continuance." *Id.* (citing *United States v. McClendon*, 782 F.2d 785, 789 (9th

Cir.1986)).  *See United States v. Castro,* 972 F.2d 1107, 1109 (9th Cir.1992) (motion to

substitute counsel three days before trial deemed untimely);  *United States v. Altamirano* 633

F.2d 147 (1980) (where request to discharge retained counsel was made on eve of trial, trial

1   court was justified in denying appellant's request where counsel's manifest competence,

2   appellant's ambiguity with respect to his desires regarding representation, and the need to press

3   forward with expediting the trial plainly justified the decision by the trial court.)  This court

4   cannot conclude as a matter of law that the trial court "actually violated [petitioner's]

5   constitutional rights in that the conflict between [petitioner] and his attorney had become so great

6   that it resulted in a total lack of communication or other significant impediment that resulted in

7   turn in an attorney–client relationship that fell short of that required by the Sixth Amendment."

8   *Schell v. Witek,* 218 F.3d 1017, at 1026.  On the contrary, it was, in this court's view, prudent

9   and appropriate for the court, after conducting two hearings at which petitioner's concerns were

10   addressed, to deny petitioner's motions.  The certain disruption of the pending trial weighed

11   against petitioner's untimely request.  Because petitioner did not have alternate counsel who was

12   prepared to step in and immediately assume representation, the timing of this request was such

13   that it would have required the court to continue the trial to avoid obvious prejudice to petitioner.

14   This delay would cause inconvenience to the court, the jurors, and the witnesses waiting to

15   testify during proceedings that day.  Petitioner's motion to substitute counsel was therefore

16   untimely.

17       To the extent that petitioner's claim involves the issue of self-representation, a criminal

18   defendant may waive his right to counsel and represent himself.  *Faretta v. California*, 422 U.S.

19   806 (1975).  However, California law requires that requests for self-representation be made

20   "within a reasonable time prior to commencement of trial."  *People v. Windham*, 19 Cal.3d 121,

21   127-128 (1977).  California's requirement that a request for self-representation be timely made is

22   not in contravention to clearly established federal law as decided by the United States Supreme

23   Court, and therefore petitioner may not succeed on such a claim.

24       Therefore, the appellate courts' rejection of the claim was not contrary to, nor involved

25   an unreasonable application of, controlling federal law, nor was based on an unreasonable

26   determination of the facts.  See 28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to

1   federal habeas relief on his Sixth Amendment claim.

2          B.      Ineffective Assistance of Counsel

3          Petitioner's second and sixth claims allege that he received ineffective assistance of

4   counsel in violation of the Sixth Amendment to the United States Constitution.  Petitioner asserts

5   that trial counsel rendered ineffective assistance by failing to move to suppress evidence

6   obtained by police officers who entered his home without a warrant, and also that trial and

7   appellate counsel failed to raise issues critical to his defense.

8          1.      Procedural Default Issue

9          There has been no reasoned opinion on this issue in the courts below.  On April 3, 2002,

10  the Sacramento Superior Court, on petition for a writ of habeas corpus, denied this claim on the

11  basis that petitioner failed to give details or attach supporting documentation, and as such, failed

12  to state with particularity the facts upon which he was relying to justify relief.  On March 18,

13  2003, the Sacramento Superior Court ruled again on this issue with the same result.

14         2.      Standards for Determining Claims of Ineffective Assistance of Counsel

15         The Sixth Amendment guarantees the effective assistance of counsel.  The United States

16  Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*

17  *v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the

18  circumstances, counsel's performance fell below an objective standard of reasonableness.  *Id.* at

19  688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been

20  the result of reasonable professional judgment.  *Id.* at 690.  The federal court must then

21  determine whether in light of all the circumstances, the identified acts or omissions were outside

22  the wide range of professional competent assistance.  *Id.*

23         Second, a petitioner must affirmatively prove prejudice.  *Strickland*, 466 U.S. at 693.

24  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional

25  errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable

26  probability is "a probability sufficient to undermine confidence in the outcome."  *Id.  See also*

12

1  *Williams v. Taylor*, 529 U.S. 362, 391-92 (2000); *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir.

2  2000).  A reviewing court "need not determine whether counsel's performance was deficient

3  before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ...

4  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ...

5  that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting

6  *Strickland*, 466 U.S. at 697).

7        The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

8  *Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v.*

9  *Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant does not have a

10  "constitutional right to compel appointed counsel to press nonfrivolous points requested by the

11  client, if counsel, as a matter of professional judgment, decides not to present those points."

12  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are

13  to be pressed." *Id.*  Otherwise, the ability of counsel to present the client's case in accord with

14  counsel's professional evaluation would be seriously undermined.  *Id.  See also Smith v. Stewart*,

15  140 F.3d 1263, 1274 n.4 (9th Cir.), *cert. denied*, 525 U.S. 929 (1998) (counsel not required to file

16  "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate

17  advocacy.")  Further, there is, of course, no obligation to raise meritless arguments on a client's

18  behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well

19  as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  *See Miller*, 882

20  F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must demonstrate

21  that, but for counsel's errors, he probably would have prevailed on appeal.  *Miller*, 882 F.2d at

22  1434 n.9.

23              a.      Trial Counsel

24        Petitioner claims he received ineffective assistance of counsel due to trial counsel's

25  decision not to move to suppress evidence gathered as a result of a warrantless search.  The facts

26  relating to petitioner's desired suppression motion are as follows:  Police officers performed a

1   warrantless search of petitioner's residence following one of the robberies for which petitioner

2   was convicted, after matching the license plate number of the getaway car with petitioner's

3   address.  RT 249-250.  One of the officers responding to petitioner's residence ascertained that

4   two probationers with search conditions were registered at that address.  RT 263.

5        The officers' warrantless entry into petitioner's residence was executed for two purposes:

6   (1) to produce petitioner for an in-field identification by the loss-prevention officer who

7   witnessed, and tried to prevent, the robbery; and (2) to search for evidence.  RT 190-192.

8        When an officer has reasonable suspicion that a probationer subject to a search condition

9   is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that

10  an intrusion on the probationer's significantly diminished privacy interests is reasonable.  *United*

11  *States v. Knights,* 534 U.S. 112 (2001).  Under the same circumstances, "reasonable suspicion is

12  constitutionally sufficient [to] also render a warrant requirement unnecessary."  *Id.* (citing *Illinois*

13  *v. McArthur*, 531 U.S. 326, 330 (2001) (noting that general or individual circumstances, including

14  "diminished expectations of privacy," may justify an exception to the warrant requirement)).

15       In the instant case, the police officers had reasonable suspicion to believe that a resident at

16  petitioner's address had been involved in the robbery.  For the foregoing reasons, the warrantless

17  search of petitioner's residence was not in violation of petitioner's constitutional rights so a

18  motion to suppress would have been futile.  Therefore, counsel's election not to bring a motion to

19  suppress the in-court identification cannot be said to have resulted in deficient performance.

20  Having thus disposed of the first prong, it is unnecessary to reach the second prong of *Strickland*.

21  As such, the state court's rejection of petitioner's second claim for relief was neither contrary to,

22  nor an unreasonable application of, controlling principles of United States Supreme Court

23  precedent.  Petitioner's second claim for relief should be denied.

24       Petitioner also claims that his trial counsel failed to raise the issues of racial bias in jury

25  selection and prosecutorial misconduct in closing statements, and failed to prepare petitioner to

26  testify or make an informed decision not to.  This claim is a list of unsupported assertions as to

1   ineffective assistance of counsel.  Petitioner has not, by making bare assertions, demonstrated that

2   his trial or appellate counsel's performance was deficient pursuant to *Strickland*.  Even if

3   deficient performance could be inferred from petitioner's averments, petitioner has not

4   demonstrated that any of the acts or omissions alluded to in this claim resulted in prejudice.

5   Therefore, petitioner's claim as to ineffective assistance of trial counsel fails.

6   b.   Appellate Counsel

7   Petitioner alleges that appellate counsel individually rendered ineffective assistance of

8   counsel by failing to raise the following issues: 1) petitioner was denied his right to a speedy trial,

9   2) the judge refused to allow a defense witness to testify, 3) trial counsel did not object to the

10  removal of petitioner's clothing at trial, 4) trial counsel did not conduct investigation to exonerate

11  his client beyond that which had been done already by the public defender's office, 5) the pretrial

12  judge did not provide due process allowing sufficient time to examine and cross-examine

13  witnesses so as to provide an adequate defense, 6) trial counsel did not attempt to impeach

14  prosecution witnesses, 7) two very damaging exhibits were introduced and viewed by jurors and

15  should not have been admissible, 8) inconsistent statements were made by prosecution witnesses,

16  9) evidence was obtained by illegal search and seizure, 10) there was racial bias in jury selection,

17  and 11) the prosecutor committed misconduct in closing statements.

18  This claim is a list of unsupported assertions as to ineffective assistance of counsel.

19  Petitioner has not, by making bare assertions, demonstrated that his trial or appellate counsel's

20  performance was deficient pursuant to *Strickland*.  Even if deficient performance could be

21  inferred from petitioner's averments, petitioner has not demonstrated that any of the acts or

22  omissions alluded to in this claim resulted in prejudice.  Therefore, petitioner's claim as to

23  ineffective assistance of trial counsel fails.

24  C.   Sixth Amendment Right to Counsel

25  Petitioner's third claim is that the in-court identification at his trial was made in violation

26  of his constitutional Sixth Amendment right to counsel.  In ruling on petitioner's first petition for

15

1    writ of habeas corpus, the Sacramento Superior Court denied petitioner's claim under *People v.*

2    *Mayfield*, 5 Cal.4th 220 (1993), holding, "if there were error in admitting the in-court

3    identifications, petitioner would have needed to raise the issues on appeal, and since an appeal of

4    the judgment is still pending in the Third District Court of Appeal at this time, this court is

5    currently without jurisdiction to decide this claim."  Exhibit J.  His second petition was denied as

6    successive under *In re Clark*, 5 Cal.4th 750 (1993) on March 18, 2003.  On appeal from that

7    denial the Third District Court of Appeal heard only one claim: that the trial court violated

8    petitioner's Constitutional rights under the Sixth and Fourteenth Amendments when it denied his

9    motion to discharge his retained counsel, as discussed above.  Therefore, this court will turn to the

10   merits of petitioner's claim.

11          The in-court identification in petitioner's case was based on an in-field show-up at his

12   residence, conducted several hours after one of the robberies for which he was convicted, which

13   petitioner claims was carried out in violation of his constitutional rights.  Generally, an in-field

14   show-up is an informal confrontation involving only the police, the victim, and the suspect.  One

15   of its principal functions is a prompt determination of whether the correct person has been

16   apprehended. *People v. Dampier*, 159 Cal.App.3d 709, 713 (1984) (citing *People v. Anthony*, 7

17   Cal.App.3d 751, 764 (1970)).  Such knowledge is of overriding importance to law enforcement,

18   the public, and the criminal suspect himself.  *Id*. (citing *Anthony*, *supra*, 7 Cal.App.3d at 765).

19   An in-field show-up is not the equivalent of a lineup.  The two procedures serve different, though

20   related, functions, and involve different considerations for all concerned.  *Id*. at 713.

21          The United States Supreme Court held in *Kirby v. Illinois*, 406 U.S. 682 (1972), that the

22   right to counsel pertained only to post-indictment lineups.  The starting point of the adversary

23   process, the Court stated, is the initiation of judicial proceedings by indictment or information.

24   The Sixth Amendment guarantees representation only in "criminal prosecutions," and it is not

25   until a defendant is formally charged that a criminal prosecution begins.  *Id*. at 689, 690.

26   ////

1    The in-court identifications in petitioner's case did not violate his Sixth Amendment right

2    to counsel, as police conducted a pre-indictment show-up only a few hours after the robbery they

3    were investigating.  RT 190, 248, 280.  Petitioner's right to counsel had not yet attached at that

4    time; therefore, petitioner was not denied the assistance of counsel.  Petitioner's claim to this

5    effect must be denied.

6    D.   The Court's Denial of Petitioner's Request for a Continuance to Secure a Defense

7         Witness

8    Petitioner's fourth claim is that the court's refusal to grant him a one-day continuance in

9    order to secure a defense witness violated his rights under the Sixth and Fourteenth amendments

10   to the United States Constitution.  The Sacramento Superior Court heard this claim on April 3,

11   2002, on petition for habeas corpus and ruled that this was a matter that could have been raised on

12   appeal, and since an appeal in petitioner's case was still pending at that time, it was without

13   jurisdiction to decide the claim.  Respondent's Exhibit J.  The Court of Appeal did not hear this

14   claim, however.  Therefore, this court will turn to the merits of petitioner's claim.

15   The concept of fairness, implicit in the right to due process, may dictate that an accused be

16   granted a continuance in order to prepare an adequate defense. *United States v. Bogard*, 846 F.2d

17   563, 566 (9th Cir. 1988).  There are four factors considered in reviewing a denial of a request for

18   a continuance.  The weight attributed to any single factor may vary with the extent of the showing

19   on other factors.  The factors are (1) a defendant's diligence in preparing his defense prior to trial,

20   (2) the likelihood that the need for a continuance could have been met if the continuance had been

21   granted, (3) the extent to which granting the continuance would have inconvenienced the court

22   and the opposing party, including its witnesses, and (4) the extent to which the defendant may

23   have suffered harm as a result of the court's denial of his motion.  The petitioner must show,

24   however, that he has suffered prejudice from the denial of a continuance.  *See United States v.*

25   *Flynt*, 756 F.2d 1352, 1359 (9th Cir.), *amended*, 764 F.2d 675 (9th Cir.1985).

26   ////

17

1    First, the court considers petitioner's diligence in preparing his defense prior to the date

2   set for trial.  *See*, *e.g.*, *United States v. Lustig*, 555 F.2d 737, 744 (9th Cir.), *cert. denied*, 434 U.S.

3   926 (1977), *cert. denied*, 434 U.S. 1045 (1978); *United States v. Brandenfels*, 522 F.2d 1259,

4   1263 (9th Cir.), *cert. denied*, 423 U.S. 1033 (1975).  The record shows that petitioner's defense

5   counsel submitted a trial brief regarding the impeachment witness.  RT 268.  After reviewing the

6   brief, the court concluded that it required an offer of proof as to what the witness would be

7   testifying to, as there was no proof, and she had no distinct memory, that she was actually present

8   at the time one of the robberies was committed.  RT 268.  Defense counsel stated that,

9   notwithstanding the efforts of the public defender investigators who previously worked on the

10   case, he was unable to establish that the witness was present at the time of the robbery.  RT 269.

11   Investigation reports prepared by the public defender's investigator reveal that the only records

12   indicating the witness's presence at the location of the robbery place her there a full six days after

13   the commission of the crime. Without regard to that, the court sustained the motion *in limine* to

14   exclude the witness, finding that absent proof, the witness would be unable to provide testimony

15   helpful to the jury.  RT 269, 273.

16    It is evident that petitioner exercised diligence in attempting to establish the witness's

17   basis of knowledge for her testimony.  An investigator from the public defender's office had

18   contacted the witness, as well as representatives of the organization that the witness was working

19   for and the personnel service company that coordinated her employment.  RT 269.  Despite

20   speaking to all three people who were in the best position to know, the investigator was unable to

21   gather conclusive proof that the witness was present at the time of the robbery.  In fact, there was

22   evidence to the contrary.  Therefore, the continuance would not have served a useful purpose.

23   Granting the request would have inconvenienced the court, the government, and witnesses.

24   Furthermore, petitioner did not suffer severe prejudice as a result of the denial of his motion.  The

25   degree of diligence here was more than sufficient; indeed it disclosed that a continuance would

26   not have assisted petitioner in proving up more than had already been attempted.  *Compare*

1   *United States v. Barrett*, 703 F.2d 1076, 1080 (9th Cir.1983) (defendant was first notified of

2   government's intention to present expert witness eight days before trial and made "diligent effort"

3   to secure rebuttal expert; continuance should have been granted), with *Lustig*, 555 F.2d at 744

4   (request for continuance in order to obtain alternative counsel was properly denied because

5   defendant had ample time and resources to obtain desired counsel prior to trial).

6       Second, the court considers how likely it is that the need for a continuance could have

7   been met if the continuance had been granted.  *See*, *e.g*., *United States v. Hernandez*, 608 F.2d

8   741, 746 (9th Cir.1979).  As stated above, it is unlikely that anything more could have been

9   discovered regarding the witness's presence at the time of the robbery, as a defense investigator

10  had already contacted and interviewed everyone with knowledge as to the witness's work hours,

11  so it is therefore unlikely that the need for a continuance would have been met.  *Cf. United States*

12  *v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir.1978) (denial of continuance proper where, *inter alia*,

13  moving party could not demonstrate that he could produce prospective witness even if

14  continuance was granted); *Powell v. United States*, 420 F.2d 799, 801 (1969) (denial of

15  continuance proper when, *inter alia,* moving party could not show that prospective witnesses

16  could be located within a reasonable time); *Hernandez*, 608 F.2d at 746 (denial of continuance

17  proper when moving party could not demonstrate that desired testimony could be obtained even if

18  continuance was granted).

19      Third, the court considers the extent to which granting the continuance would have

20  inconvenienced the court and the opposing party, including its witnesses.  *See*, *e.g*., *United States*

21  *v. Shuey*, 541 F.2d 845, 847 (9th Cir.1976), cert. denied, 429 U.S. 1092 (1977); *United States v.*

22  *Charnay*, 577 F.2d 81, 84 (9th Cir.1978).  Petitioner made his request for a continuance on the

23  fifth day of trial with five witnesses scheduled to appear for the government.  A continuance

24  would have required subpoenaing the five witnesses for another day, causing great inconvenience

25  to the witnesses and to the government.  *See Shuey*, 541 F.2d at 847 (government had spent

26  substantial time and money interviewing witnesses and reviewing exhibits and had subpoenaed

witnesses from Texas to Hawaii; motion for continuance made on eve of trial properly denied); cf. *United States v. Brandenfels*, 522 F.2d at 1263 (motion for continuance made late in the proceedings; denial of continuance proper in view of excessive trial preparation required of the government and the number of witnesses expected to be called).  Thus, petitioner cannot show that granting his motion for a continuance would not have inconvenienced the government or its witnesses.

The fourth and final consideration is the extent to which the petitioner may have suffered harm as a result of the court's denial of his motion.  *See*, e.g., *United States v. Long*, 706 F.2d 1044, 1053 (9th Cir.1983); *Barrett*, 703 F.2d at 1081; *Powell v. United States*, 420 F.2d 799, 801 (1969); *Lustig*, 555 F.2d at 745, n. 7.  The witness for whom petitioner sought a continuance was the only witness that petitioner could call to impeach the testimony of the prosecution's key witnesses.  However, whether this witness would have refuted that testimony is doubtful. Because this witness was unable to recall the exact date that she worked at the location of the robbery, and because records existed that demonstrated that she worked at the location almost one full week after the robbery, it is not conclusive that her testimony would have served petitioner's defense.  Therefore, petitioner did not suffer prejudice as a result of the court's refusal to grant a continuance.

Whether a denial of a motion for a continuance constitutes an abuse of discretion turns largely upon the circumstances of the individual case.  *See Ungar v. Sarafite*, 376 U.S. 575 (1964).  In determining whether the court has acted in an arbitrary or unreasonable manner, the relevant factors are considered together, evaluating the extent of the petitioner's showing on each one.  The weight attributed to any single factor may vary with the extent of the showings on the other factors.  However, in order to obtain a reversal, petitioner must show at a minimum that he has suffered prejudice as a result of the denial of his request. *United States v. Maybusher*, 735 F.2d 366, 369 (9th Cir.1984), *cert. denied*, 469 U.S. 1110 (1985); *Lustig*, 555 F.2d at 744.

////

1    Petitioner has not shown that the witness had personal knowledge as to what she was expected to

2    testify and therefore has not established that he suffered prejudice as a result of the district court's

3    decision to deny the continuance.  After evaluating the lack of prejudice along with the weakness

4    of petitioner's showings as to the other factors, it is clear that the denial of the continuance was

5    reasonable.

6          Petitioner's due-process right was not violated because the trial court did not act

7    arbitrarily in denying the motion for a continuance.  If granted, the continuance would not have

8    served a useful purpose and it would have delayed the trial.  Therefore, the claim as to this issue

9    must be denied.

10          E.     Right To Jury Determination of Prior Strike Allegations

11          Petitioner's fifth claim is that he was denied a right to a jury trial regarding the two prior

12    strikes and the allegations of murder and robbery convictions and a prior prison term.  RT 1-2.

13    Through defense counsel, petitioner requested to bifurcate the trial on his prior convictions.  RT

14    1-2.  As to that request, the court stated, "the prior convictions are not going to be admissible in

15    front of the jury for impeachment purposes or any other things that gets [sic] bifurcated.  RT 2.

16    The court than asked if either counsel wanted to say anything further before the court ruled on the

17    issue.  There being no comments, the court granted the request to bifurcate and keep from the jury

18    that petitioner had two prior strike allegations.  RT 1-2.  However, petitioner argues that he was

19    denied his rights under the Fifth, Sixth, Seventh, Eighth, and Fourteenth amendments because the

20    trial court failed to obtain his express personal waiver of his jury trial right.

21          Under California law, a defendant has no state constitutional right to jury trial on sentence

22    enhancement allegations.  *People v. Thomas,* 91 Cal.App.4th 212 (App. 2 Dist. 2001), as

23    modified, review denied, *certiorari* denied 535 U.S. 938 (2002).  In reviewing petitioner's claim,

24    the first question is whether there has been a state constitutional violation. That issue is controlled

25    by the decision of the California Supreme Court in *People v. Vera*, 15 Cal.4th 269, 277 (1997).

26    ////

1    In *Vera*, the Supreme Court held:

2       When the defendant seeks to bifurcate the determination of the truth of the prior
         conviction allegation from determination of the defendant's guilt of the charged
3       crimes . . . only the statutory right to jury trial is implicated in the trial of the
         sentencing allegations.  Since there is no constitutional right to have the jury
4       determine the truth of a prior conviction allegation [citation], it follows that the
         failure to obtain an express, personal waiver of the right to jury trial of prior
5       conviction allegations does not constitute a violation of the state constitutional
         mandate.

6

7    *Id.* (citing *People v. Wiley*, 9 Cal.4th 580, 586, 589 (1995)).  In *People v. Epps,* 25 Cal.4th 19, 23

8    (2001) the California Supreme Court held that "[t]he right, if any, to a jury trial of prior

9    conviction allegations derives from [Penal Code] sections 1025 and 1158, not from the state or

10   federal Constitution." *Citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)*; Wiley*, 9 Cal.4th

11   at 585.  No constitutional violation occurred as a result of petitioner's failure to personally waive

12   his statutory jury trial right on the allegations that he had suffered two prior strikes, murder and

13   robbery convictions, and had a prior prison term.

14       The second question is whether the failure to secure a personal agreement on petitioner's

15   part to have the trial judge determine the truth of the two prior strikes and other allegations

16   violated petitioner's Sixth and Fourteenth Amendments' jury trial right.  In *Apprendi*, the United

17   States Supreme Court held, "[o]ther than the *fact of a prior conviction*, any fact that increases the

18   penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

19   proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added.)

20       Appellate courts have held that *Apprendi* does not require full due-process treatment to

21   recidivism allegations that involved elements merely beyond the fact of conviction itself.  *United*

22   *States v. Palomino-Rivera*, 258 F.3d 656, 661 (7th Cir. 2001) (*Apprendi* does not apply to prior

23   conviction allegation pursuant to 8 U.S.C. § 1326); *United States v. Johnstone*, 251 F.3d 281,

24   286, fn. 6 (1st Cir. 2001) ("Moreover, by its express terms, *Apprendi* concerns only sentencing

25   facts '[o]ther than the fact of a prior conviction . . . .'" citing *Apprendi* 530 U.S. at 490).

26   ////

1    The state court did not deprive petitioner of his federal due process rights. At the time of

2    his conviction and direct appeal, the California Supreme Court had not yet interpreted California

3    Penal Code section 1025.  Even after the California Supreme Court addressed the issue, the scope

4    of the right remained unclear.  *People v. Epps*, 25 Cal.4th 19 (2001) (noting that the right to a jury

5    determination of whether a prior conviction occurred exists only "in an appropriate case," and

6    that "depending on the circumstances, the question might well be for the court" rather than the

7    jury).  Therefore, petitioner did not have a "substantial and legitimate expectation" that he would

8    receive a jury trial such that his federal due-process rights would be implicated.  *Hicks v.*

9    *Oklahoma*, 447 U.S. 343, 346-47 (1980) (granting habeas relief because the state court violated

10   petitioner's "substantial and legitimate expectation" to a jury sentence and made a "wholly

11   incorrect" finding that the error was harmless).  For the foregoing reasons, petitioner's claim as to

12   this issue is without merit.

13       F.    Jury Instruction

14       Petitioner's seventh claim is that the judge committed error by improperly instructing the

15   jury as a result of a failure to apply the relevant statutes and a failure to properly interpret

16   controlling precedent, in violation of his right to due process under the Fourteenth Amendment to

17   the United States Constitution.  Specifically, petitioner claims only that the statutory language

18   was altered on jury instructions and that this confused the jury and gave them no alternative but to

19   find petitioner guilty of use of a weapon and assault.

20       Issues relating to jury instructions must infect the entire trial in order to establish a

21   violation of due process.  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Estelle v. McGuire*, 502

22   U.S. 62, 72 (1991).  Petitioner has simply provided no information to support a claim that the jury

23   was instructed in a way that would violate due process.

24       The state court's adjudication was neither contrary to, nor an unreasonable application of,

25   controlling case law of the United States Supreme Court, nor an unreasonable application of the

26   facts.

1   G.   Various Claims of Court Error

2   Petitioner's eighth and final claim consists of four allegations of court error: (1) the judge

3   refused to recuse himself upon petitioner's motion; (2) the judge refused to exclude inadmissible

4   evidence; (3) the judge denied petitioner's motion to bifurcate the jury trial on the two strike prior

5   allegations and the charged crimes; (4) the judge failed to apply relevant statutes, (5) the judge

6   denied the right to challenge alleged priors or strikes; (6) the judge never inquired of retained

7   counsel whether he was prepared; (7) the judge never permitted petitioner or his counsel at

8   sentencing to challenge or provide "1204 portion" (which the court construes as a claim that the

9   court did not permit petitioner or his counsel to make a motion pursuant to California Penal Code

10  §1203.4)[6]; (8) the judge did not permit defense witness Portery McFadden to testify; (9) the judge

11  demonstrated bias in permitting the prosecutor to file an *in limine* motion regarding a prosecution

12  witness's bad acts; (10) the judge forced petitioner to proceed to trial with retained counsel and

13  never considered the continuous conflict between petitioner and his counsel, even though the jury

14  continued being selected over four days; (11) the judge did not or avoided challenge of strikes;

15  and (12) judgment and sentence was pronounced in disregard of mandatory procedural

16  requirements.

17  There is no reasoned denial of this "claim" in the lower courts.  The Sacramento Superior

18  Court noted, citing *In re Swain*, 34 Cal.2d 300, and *In re Harris*, 5 Cal.4th at 827, n. 5, that

19  petitioner had failed to attach reasonably available documentary evidence or to give further

20  details or legal support to his amalgamated claim.  Ex. T at 4-54.  On habeas, petitioner's

21  presentation of the facts in support of this claim is again so abbreviated, conclusory, and vague

22  that it does not support a basis for federal habeas corpus relief.  *Jones v. Gomez*, 66 F.3d 199,

23  204-205 (1995).

24  ////

25

26  [6] Cal. Penal Code §1203.4 provides the court a basis, in its discretion and in the interests of justice, to grant a change of plea or set aside a verdict.

1       The nature of petitioner's claim is completely unclear.  The claim consists solely of a

2  laundry list of asserted mistakes by the court.  Petitioner fails to provide any factual or legal

3  support for the assertions or to suggest how the claims might provide a basis for federal habeas

4  relief.  The state court's adjudication was neither contrary to, nor an unreasonable application of,

5  controlling case law of the United States Supreme Court, nor an unreasonable application of the

6  facts.

7       For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

8  application for a writ of habeas corpus be denied.

9       These findings and recommendations are submitted to the United States District Judge

10  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after

11  being served with these findings and recommendations, any party may file written objections with

12  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

13  Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

14  specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

15  F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

16  DATED:  January 18, 2007.

18  EDMUND F. BRENNAN

19  UNITED STATES MAGISTRATE JUDGE